

# UNITED STATES DISTRICT COURT

for the

Middle

District of

North Carolina

Division

|  |  |
|---|---|
| )<br>)<br>)<br>)<br>Plaintiff(s) )<br>Shayne Guiliano )<br>–v– )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Defendant(s) )<br>Leila Strickland, Michelle Egger, Breakthrough Energy Ventures, )<br>LLC, Goodwin Proctor LLP, Biomilq,Inc. ) | Case No. 1:24cv563<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)*   Yes   No (X) |

## COMPLAINT FOR A CIVIL CASE

### I.   The Parties to This Complaint

#### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Shayne Guiliano |
| Street Address | 141 W. King St. |
| City and County | Hillsborough, Orange County |
| State and Zip Code | North Carolina, 27278 |
| Telephone Number | 9194507226 |

| E-mail Address | autonomous@gmail.com |
|---|---|

**B.**    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| Name | Leila Strickland |
|---|---|
| Job or Title *(if known)* | Biomilq,Inc, CEO |
| Street Address | 3827 NC Hwy 57 |
| City and County | Hillsborough, Orange County |
| State and Zip Code | North Carolina, 27278 |
| Telephone Number | 6173127169 |
| E-mail Address *(if known)* | strangeattractor@gmail.com |

Defendant No. 2

| Name | Michelle Egger |
|---|---|
| Job or Title *(if known)* | |
| Street Address | 1003 Wave Rd |
| City and County | Chapel Hill, Orange County |
| State and Zip Code | North Carolina, 27517 |
| Telephone Number | unknown |
| E-mail Address *(if known)* | Unknown |

Defendant No. 3

| Name | Biomilq,Inc |
|---|---|
| Job or Title *(if known)* | |
| Street Address | 9 Laboratory Drive, Suite 158 |
| City and County | Durham, Durham |
| State and Zip Code | North Carolina, 27709 |
| Telephone Number | unknown |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Breakthrough Energy Ventures, LLC |
| Job or Title *(if known)* | |
| Street Address | 1209 Orange St. |
| City and County | Wilmington, New Castle |
| State and Zip Code | DE 19801 |
| Telephone Number | unknown |
| E-mail Address *(if known)* | |

Defendant No. 5

| | |
|---|---|
| Name | Goodwin Proctor LLP |
| Job or Title *(if known)* | |
| Street Address | 100 Northern Ave |
| City and County | Boston, Suffolk |
| State and Zip Code | MA, 02210 |
| Telephone Number | unknown |
| E-mail Address *(if known)* | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties    is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of    another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a    diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

(X) Federal question            Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

35 U.S.C. § 256

**B.** **If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

   a. If the plaintiff is an individual

   *(name)* The plaintiff, Shayne Guiliano , is a citizen of the

   State of *(name)* North Carolina .

   b. If the plaintiff is a corporation

   *(name)* The plaintiff, , is incorporated

   under the laws of the State of *(name)* ,

   and has its principal place of business in the State of *(name)*

   .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual

   The defendant, *(name)* Leila Strickland , is a citizen of

   the State of *(name)* North Carolina . Or is a citizen of

   *(foreign* .
   *nation)*

   The defendant, *(name)* Michelle Egger , is a citizen of

   the State of *(name)* North Carolina . Or is a citizen of

   *(foreign* .
   *nation)*

   b. If the defendant is a corporation

   The defendant, *(name)* Biomilq,Inc , is incorporated under

   the laws of the State of *(name)* Delaware , and has its

   principal place of business in the State of *(name)* North Carolina .

   Or is incorporated under the laws of *(foreign nation)* ,

The defendant, *(name)* Breakthrough Energy Ventures, LLC , is incorporated under

the laws of the State of *(name)* Delaware , and has its

principal place of business in the State of *(name)* Massachussets .

Or is incorporated under the laws of *(foreign nation)* ,

The defendant, *(name)* Goodwin Proctor, LLC , is incorporated under

the laws of the State of *(name)* Massachussetts , and has its

principal place of business in the State of *(name)* Massachussetts .

Or is incorporated under the laws of *(foreign nation)* ,

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

at

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

$85,000,000 for unjust enrichment, only received by counterparties after exclusive granting of claims resulting from an incorrect failure to list Guiliano as an inventor on U.S. Patent Application No. 11,111,477 B2.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

U.S. Provisional Patent Application No. 62/958,407 ("Patent '407") correctly lists Guiliano and Strickland as co-inventors. U.S. Patent Application No. 11,111,477 B2 ("Patent '477") incorporates the entirety of Patent '407, but incorrectly only lists Strickland as inventor. Guiliano is a true co-inventor of the subject matter of most claims in Patent '477, and the failure to correctly list Guiliano as inventor on Patent '477 has led to the unjust enrichment of defendants who have attracted tens of millions of dollars in investment at Biomilq,Inc resulting from the inequitable filing of Patent '477 which incorrectly lists only Strickland as an inventor on Patent '477. See attached pleadings for additional fact pleadings.

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include        the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any  punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or  punitive money damages.

Under the authority of 35 U.S.C. § 256, Guiliano requests correction of Patent '477 so that his name is properly listed as an inventor on subject matter which he co-invented with Strickland from 2013 to 2020; and Guiliano requests imposition of constructive trust over all benefits received or conferred on Biomilq,Inc and Egger, Strickland, BEV, and Goodwin while assisting and directing Biomilq,Inc in scientific operations, patent filing, and fundraising operations based on the claim that Strickland was the sole inventor of subject matter in Patent '477; and any other equitable relief which this Court finds just and proper. See attached pleadings for additional information.

## V.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information,      and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause    unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable  opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the        requirements of Rule 11.

### A.  For Parties Without an Attorney

be

I agree to provide the Clerk's Office with any changes to my address where case–related papers may served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:         July 8, 2024

Signature of Plaintiff

Printed Name of Plaintiff         Shayne Guiliano

### B.  For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

United State District Court
Middle District of North Carolina


Shayne Guiliano,
       Plaintiff

v.

Leila Strickland, Michelle Egger,
Breakthrough Energy Ventures LLC,
Goodwin Proctor LLP, Biomilq,Inc.,
      Defendants.

**ADDENDUM TO COMPLAINT FOR
INVENTORSHIP CORRECTION AND
UNJUST ENRICHMENT**

Shayne Guiliano, representing himself, files this complaint under 35 U.S.C. § 256

and the jurisprudence of unjust enrichment, to complain of Defendants, and alleges

and states the following:

**Nature of this action**

1. This complaint is filed personally on behalf of Guiliano in respect of his

   personal interests in U.S. Provisional Patent Application No. 62/958,407

   ("Patent '407") and U.S. Patent Application No. 11,111,477 B2 ("Patent '477"),

   and also filed *"directly"* on behalf of Guiliano, pursuant to *Barger v. McCoy*

   *Hillard Parks,* 346 N.C. 650, 488 S.E.2d 215 (N.C. 1997), to any extent

   necessary, in respect of the unique and peculiar damage and harm to

   Guiliano's legal and economic interests caused by the absence of his name on

Patent '477, and the resulting unjust enrichment of the defendants benefiting from such a transaction as the expense of Guiliano, which granted them exclusive rights in subject matter first filed in Patent '407, which does correctly list Guiliano.

2. This inventorship error on Patent '477 also indirectly affects equitable rights in 108Labs' claims in Guiliano's and Strickland's interests in Patents '407, and therefor '477, in respect of Guiliano's and Strickland's fiduciary duties to 108Labs LLC as co-manager during the invention first described by Patent '407.

3. Guiliano's economic ownership interests in 108Labs LLC are subject to equitable distribution proceedings in NC Orange County Case No. 22CVD283.

4. The nature of this action arises solely out of the fact that Guiliano's name is incorrectly not listed as an inventor on Patent '477, which raises an equitable claim that runs directly and personally to Guiliano.

5. Guiliano now seeks correction of inventorship, and disgorgement of unjust gains received by counterparties from the filing of Patent '477 without all correct inventors listed. He requests tracing and disgorgement of unjust gains from any inequitable transactions which resulted from his absence on Patent '477, including accounting for res assets tracing to cash payments made to Biomilq,Inc since the filing of Patent '477 which were contingent on Biomilq,Inc claiming to own exclusive interests in subject matter traceable to

inventions first described in Patent '407, also clearly described by the subject matter of claims in Patent '477 tracing to Guiliano original conception of the field of cell-cultured milk on September 11, 2013.

## Parties

6. Guiliano is an organic chemist, software developer and entrepreneur who co-founded 108Labs LLC with his then-wife Leila Strickland ("Strickland") in 2013 to develop his novel conception for cell-cultured milk first conceived on September 11, 2013. Guiliano resides in Orange County, NC.

7. Leila Strickland is the former spouse of Guiliano, and former co-manager of 108Labs LLC during the invention of all subject matter in Patent '407. Upon information and belief, Strickland was the majority owner of Biomilq,Inc when Biomilq,Inc filed Patent '477, although, she affirms to Guiliano that she reported to Biomilq,Inc President and CEO Egger as an employee of Biomilq,Inc at that time, and Strickland claims she was not involved in the decision of who would be listed as an inventor on Patent '477.

8. Goodwin Proctor LLP, is a law firm with offices around the United States that engaged Biomilq,Inc sometime in early 2020.

9. Michelle Egger was the President and CEO of Biomilq,Inc from founding until termination by the board of Biomilq,Inc, weeks after Guiliano and 108Labs countersued Biomilq,Inc in 22CVS255 over the April 10, 2020 Transactions. Guiliano has filed several claims against Egger in District and Superior Court in North Carolina alleging various torts and equitable claims

for her conduct since assisting 108Labs in late 2019 under NDA, and related to her partnership with Guiliano and Strickland within the Biomilq Partnership before March 29, 200, all before directing Biomilq,Inc as President and CEO to then fraudulent convey interests in Patent '407, by convincing Strickland to execute certain inequitable contracts without notice to Guiliano, which made it possible to file Patent '477. Egger was a greater than 40% shareholder of Biomilq,Inc when Patent '477 was filed.

10. Breakthrough Energy Ventures is a leading venture capital firm based in Boston, MA, who directed Biomilq,Inc with a seat on the board held by an employee of BEV since the April 10, 2020 Transactions (See Orange County Case No. 22CVD283 filings, judicially noticeable under Rule 201), when BEV purchased a $3,000,000 SAFE contract on a $11,500,000 pre-money valuation. BEV's SAFE contract appears to have vested into a greater than 20% ownership of shares of Biomilq,Inc in September 2021, days after Patent '477 granted, when Biomilq,Inc raised $21,000,000 by selling priced equity. BEV was a director of Biomilq,Inc during the filing of Patent '477, and upon information and belief may be the biggest shareholder of Biomilq,Inc today. BEV was aware Strickland was married to Guiliano and aware of Strickland's fiduciary duties to 108Labs and Guiliano before March 29, 2020, and aware of 108Labs equitable ownership claim to Patent '407, when BEV first offered to make a $3,000,000 payment to the Biomilq Partnership on March 25, 2020, by purchase of a SAFE contract. After March 29, 2020, BEV

appears to have agreed to fund operations at Biomilq,Inc on the condition

that BEV receive a Biomilq,Inc board seat and SAFE addendum which gave

BEV control of future financing at Biomilq,Inc, on the condition that Egger,

Strickland and Goodwin secretly execute and file an assignment contract

granting Biomilq,Inc a global filing license through execution of an

assignment contract, which would not have been possible had 108Labs

counsel Myers correctly listed 108Labs as the applicant on Patent '407, and

not knowable if Strickland had not shared 108Labs filing receipt and

communications with Myers with Goodwin after March 29, 2020.

## JURISDICTION AND VENUE

11. Venue is proper in this Court because Plaintiff which raises a federal
    question. Defendants Strickland and Egger, and Biomilq,Inc all reside or
    operate in North Carolina's Orange and Durham counties, while Goodwin
    and BEV direct or assist Biomilq,Inc operations based in North Carolina.

## Transactions which raise this cause for action

12. From September 11, 2013 until January 8, 2020, married scientists Guiliano
    and Strickland secretly co-conceived the invention of cell-cultured milk, as
    described by U.S. Provisional Patent Application No. 62/958,407. ("Patent
    '407").

13. On July 8, 2021, the US Patent Office published U.S. Patent Application No.
    11,111,477 B2. ("Patent '477")

14. Patent '477 incorporates the entirety of Patent '407.

15. Patent '407 describes the invention of cell-cultured human milk by Shayne Guiliano ("Guiliano") and Leila Strickland ("Strickland").

16. Facially, the specification, diagrams and claims of Patent '477 and '407 appear highly similar, if only rearranged or reworded superficially in certain ways that appear trivial.

17. On or about January 17, 2020, a scientific experiment managed by Guiliano and Strickland using the secret scientific protocols described by Patent '407 used human mammary cells in a hollow fiber bioreactor to biosynthesize what is best described as "cell-cultured human milk", producing scientific samples containing a collection of human proteins, human sugars, and human lipids with life saving therapeutic value.

18. Patent '407 was filed on January 8, 2020, by Myers Bigel, P.A. ("Myers")

19. Myers was engaged as patent counsel with a family-owned North Carolina Limited Liability Company, 108Labs, LLC, 100% economically owned and co-managed by Strickland and Guiliano, when Myers filed Patent '407.

20. Patent '407 correctly lists Shayne Guiliano and Leila Strickland as co-inventors.

21. Patent '477 was secretly filed on December 10, 2020 by Goodwin Proctor, LLP, without notice to Guiliano. ("Goodwin")

22. Goodwin was engaged with a different North Carolina Corporation, Biomilq,Inc, when Goodwin filed Patent '477.

23. Goodwin has never been directly engaged with 108Labs LLC, Strickland, or Guiliano prior to July 8, 2021.

24. Patent '477 incorrectly lists only Leila Strickland as inventor, raising this cause of action for correction and unjust enrichment under 35 U.S.C. 256.

**The invention of cell-cultured milk**

25. Guiliano first conceived of producing milk with mammary cells on September 11, 2013, hours after acquiring a Research Triangle Park research lab to tinker with cells with his then wife, Strickland.

26. After Strickland left lab research to focus on child-rearing in 2010, she was finding it difficult to get any responses to her resume seeking research positions in later 2012, only a few years after completing her Stanford post-doc while pregnant with their first child.

27. Guiliano also left an organic chemistry job and career path a decade earlier to pursue a career in software development, which eventually enabled him to fund a biotechnology startup to resurrect both their research careers.

28. Throughout 2013, to resurrect their research careers on their own terms, Guiliano and Strickland organized a new family-owned biotechnology company with a plan to tinker with cells to develop novel products.

29. From September 11, 2013 to January 17, 2020, through joint efforts and daily conversation, Guiliano and Strickland conducted scientific research, brainstormed scientific protocols, and discussed published literature while they secretly developed the invention of cell-cultured milk.

30. Guiliano and Strickland produced their first 2d mammary monolayers in 2014 in their first lab run by 108Labs LLC in Research Triangle Park, and began conceptualizing their ideas for 3d tissue culture with mammary cells in 2016 in their second lab they leased for 108Labs LLC.

31. In 2017-2018, Strickland focused on developing a career in medical writing at Medthink, while Guiliano focused on his work for a National Institute of Health Core at UNC Chapel Hill, developing medical research software for academic and government researchers.

32. In 2019, Guiliano and Strickland ramped up scientific research, commercial development activities, which included seeking new partners, and began seeking funding for 108Labs LLC for the first time.

33. In September 2019, 108Labs LLC received its first investment offer from IndieBio.

34. This offer fell apart when two friends of Strickland who Guiliano and Strickland were discussing partnership with throughout 2019, Ali Rosenberg and Sarah Seay, demanded Guiliano and Strickland sign over rights to the invention of cell-cultured milk to majority control of Ms. Rosenberg and Ms. Seay at a new company, after the IndieBio offer was received, and Guiliano refused.

35. In response to losing the IndieBio offer, Guiliano and Strickland doubled down at 108Labs LLC by preparing and filing an NSF Grant, founding the Biomilq Partnership with a license to 108Labs inventions in cell-cultured

milk, hired Myers to prepare and file Patent '407, and executed an
experiment using their 3d tissue culture protocols under contract with
FiberCell Labs, who was hired to execute a proof of concept experiment to
show that 3d tissue engineering methods using the protocols secretly
developed by Guiliano and Strickland since 2013 could produce cell-cultured
human milk.

36. The cell-cultured human milk experiment was begun December 2, 2019, the
Biomilq Partnership was formed days later, the NSF Grant was filed on or
about December 13, 2019, the Patent was filed by Myers on January 8, 2020,
and the FiberCell Labs experiment produced the world's first cell-cultured
milk on or about January 17, 2020, although, it would take until March 17,
2020 to produce the conclusive scientific evidence that the FiberCell
Experiment samples contained life saving human proteins only otherwise
found in human milk.

37. The conception and invention of cell-cultured milk is now clearly a crowning
achievement in the lives and scientific relationship of Guiliano and
Strickland, even if this private marital achievement has been obfuscated and
defamed by the conduct of third parties since 2020.

**Goodwin is a conscious wrongdoer**

38. Since March 29, 2020, Goodwin has harassed and threatened Guiliano for
years to convince him to cease operations on cell-cultured milk at 108Labs,
while alternatingly directly negotiating with Guiliano, sometimes without a

lawyer present, in an attempt to persuade Guiliano to sign waiver contracts, or other agreements, which would essentially transfer rights in Patent '407 to Biomilq,Inc.

39. All such conduct by Goodwin since March 29, 2020 appears intended to divest Guiliano and 108labs of all ownership interests in inventive subject matter first described by Patent '407, ever since the day Strickland separated maritally from Guiliano.

40. In March and April of 2020, Goodwin appears to have given Strickland conflicted and facially incorrect and unethical legal advice as to her fiduciary duties to Guiliano and 108Labs.

41. Essentially, Guiliano alleges that Goodwin helped alienate his marriage and assisted Biomilq,Inc, BEV, Egger and Strickland in various inequitable transactions since then, before then suing Guiliano personally with a complaint that contains obviously false pleadings in March of 2022 to initiate 22CVS255, only days after Guiliano noticed Strickland of his intent to file for equitable distribution, which became 22CVD283.

42. Guiliano alleges all conduct by Goodwin, including patent filings by Goodwin and any litigation pending against Guiliano, is meant to serve a single purpose which is to divest Guiliano of all possible common ownership and economic interests in the subject matter described by Patent '407, indisputably owned entirely by Guiliano by marriage and inventorship since March 29, 2020.

43. Goodwin filed a still-pending declaratory judgment in 22CVS255 in its first amended complaint in order to attempt to legally establish that Guiliano and 108Labs own "no legally cognizable interest" in the invention of cell-cultured milk, after failing to negotiate for such rights since March 29, 2020. (*See* NC Orange County Case No. 22CVS255, ECF No. 318.2-93, judicially noticeable under Rule 201 of Federal Rules of Evidence)

44. Guiliano and 108Labs countersued Goodwin in 22CVS255 for material misrepresentation, and filed other torts and equitable claims in Orange County Case Nos. 24CVD473 and 24CVS500, all related to the inequitable assignment of rights in Patent '407 on April 10, 2020 by execution of an assignment contract signed by Egger and Strickland and secretly filed by Goodwin which gave Biomilq,Inc the license to file Patent '477 in national patent offices around the world.

45. Guiliano is continuing to investigate Goodwin's inequitable and unethical conduct assisting Biomilq,Inc in such conduct.

46. Guiliano affirms that Goodwin has violated or ignored several USPTO and state bar codes of conduct by assisting Biomilq,Inc transactions which amount to inequitable transactions at patent offices around the world, which interfered in the complex property rights and financial interests of Guiliano, including devaluation of 108labs by what amounts to corporate espionage as alleged in 22CVS255, all in an attempt to assist Egger, Biomilq,Inc, Strickland and BEV in establishing exclusive rights in the invention of

cell-cultured milk by any means necessary, for their unjust enrichment since the April 10, 2020 Transactions, after Guiliano repeatedly refused to sign over such rights.

47. Guiliano affirms that he is not alleging patent fraud by Goodwin or anyone at this time, because he has not discovered clear and convincing evidence that intentional fraud occurred, considering Strickland appears to have been isolated from such filing decisions at Biomilq,Inc by Goodwin upon the filing of Patent '477, and no one else at Biomilq,Inc or Goodwin has any personal knowledge of what Guiliano contributed conceptually to the invention of cell-cultured milk before March 29, 2020.

48. Guiliano's absence as inventor on Patent '477, filed by Goodwin, is clearly incorrect and therefore clearly inequitable, and such an absence has clearly unjustly enriched counterparties by essentially granting Biomilq,Inc exclusive rights in the invention of cell-cultured milk, which immediately unjustly attracted tens of millions of dollars in capital investments in September 2021, days after first granting.

**Business Development became increasingly conflicted for Strickland, Guiliano and 108Labs LLC once the project began to mature**

49. In September 2019, 108Labs LLC received its first investment offer.

50. Between September 2019 and March 2020, various controversies involving prospective investors and potential partners of 108Labs led to conflicts over

control and economic ownership interests in the invention of cell-cultured milk.

51. Throughout all of the controversies raised by early commercializations efforts of 108Labs in 2019, 2019 was actually a year of triumph scientifically for the collaboration between Guiliano and Strickland which culminated in the contemporaneous filing of an NSF Grant, execution of 108Labs LLC first 3d tissue culture experiment, and filing of Patent '407, all simultaneously executed from September 2019 until January 17, 2020, when the experiment produced what now may be described as the world's first cell-cultured human milk.

52. The co-invention of cell-cultured milk occurred over pillow talk, in the evenings, over seven year, after dinner when the babies fell asleep, when Guiliano and Strickland would chat about cell-cultured milk intermixed with various scientific endeavors they were confronting at work or curiously reading about, resulting in a daily scientific conversation over seventeen years driven by a shared curiosity and love of science apparent ever since they spent their second date in 2003 staring at sea urchin eggs dividing under a microscope in Strickland's lab at Boston College.

53. On the morning of September 11, 2013, after Guiliano and Strickland shook hands with Anna Penner of the Triangle Park Foundation to secure their first lab space after months of a waitlist, Guiliano requested Strickland write a one pager that summarized their ideas discussed since March 2020, when

Strickland first shared a cell-cultured bacon research paper with Guiliano that spurred an exciting new scientific discussion about what other types of materials and foods might be possible with cells, which eventually directly led to the invention of cell-cultured milk.

54. As of that morning of September 11, 2013, Strickland and Guiliano were focused on reproducing meat and leather projects, which were inspired by similar projects announced by Memphis Meats, and this focus on meat and leather is reflected in the executive summary written by Strickland, emailed to Guiliano the afternoon of September 11, 2013.

55. The evening of September 11, 2013, Guiliano and Strickland discussed the lab and meat and leather experiments in detail with a focus on budgeting for reagent and equipment purchasing logistics to begin acquiring cells and equipment to run the meat and leather projects in their new lab space.

56. Guiliano had arranged for acquiring tissue samples directly from a local slaughterhouse which could be used to conduct bovine meat and leather research, as a form of low cost cell acquisition for basic research, and he and Strickland brainstormed the evening of September 11, 2013 on which cuts of tissue might suffice for experimenting on bovine meat and leather with various bovine cell types.

57. At some point, guided by creative brainstorming methods he had developed over a decade of design and engineering in software development, Guiliano asked aloud, "What other cell types might we use?", before immediately

conceiving of cell-cultured milk and answering his own question with the question, "How about milking cells?"

58. At this eureka moment, Strickland and Guiliano were inspired to an extent that is difficult to put into words, but perhaps no moment in the life of either has had more impact than the moment they first discussed cell-cultured milk, comparable to the impact of parenthood in many respects.

59. Throughout that evening and the next morning, they voraciously researched and discussed published literature on mammary cells, which Strickland nor Guiliano had ever considered deeply before. By the next day, their discussion soon turned to the adherent polarized nature of mammary cells and their proclivity to form monolayers in cell-culture.

60. At 1:17pm on September 12, 2020, after one evening and morning of frivolous conversation and literature research, Strickland exclaimed her conviction to Guiliano over Google hangouts message that affirmed, "*we* are going to culture mammary epithelial cells and make milk too."

61. Over the course of seven years, Guiliano and Strickland brainstormed through a quantum of thought process, improving on each other's ideas throughout the entirety of conception of the invention of cell-cultured milk in ways which were complimentary, given their respective scientific and entrepreneurial backgrounds.

62. Guiliano trained as an organic chemist turned self-taught professional creative software and game developer who founded multiple companies since

2003, while Strickland was a cell biologist turned scientific journal article editor who could process and communicate scientific data professionally.

63. Together, their daily brainstorms indisputably produced the world's first cell-cultured milk, with the help of no one else but parties who they contracted with to assist them at 108Labs LLC.

64. Upon information and belief, before March 29, 2020, Strickland had never fully shared the full details of their scientific protocols with anyone, and what was shared with FiberCell and Egger in the fall of 2019 which was only what was necessary to execute the experiment, or develop plans for the Biomilq Partnership, for instance, all only with persons under NDA with 108Labs LLC.

65. Guiliano's creative and scientific contributions were pivotal and overriding from beginning to end, including being the first person to ever conceive of using mammary cells to make milk, and he made several key biochemical conceptual contributions relating to the protocols, including the basement membrane / protein matrix formulation necessary to induce formation of a 3d monolayer primed for milk production, and other biochemical molecular biology protocols which induce lactation state changes in the mammary tissue, and many other countless contributions that come from daily conversation with his co-inventor and wife Strickland over seven years.

66. Strickland's contributions were based on her prior experience working in cell-cultured labs at Boston College and Stanford, where she earned her

academic credentials, and her contributions derive from her understanding of classic cell culture techniques, which aided in the planning and execution of experiments and preparation of grants and disclosures for patent counsel.

67. In short, each co-inventor of cell-cultured milk listed on Patent '407 contributed significantly to the quantum of thought resulting in the invention in complementary ways throughout the entirety of development of the subject matter produced from beginning to end and resulting in creation of the world's first cell-cultured human milk on January 17, 2020, and all co-inventive discussion which led to the invention of cell-cultured milk occurred in the privacy of the marriage during daily marital conversations over seven years.

**Strickland does not appear to personally disagree that Guiliano is a true co-inventor of subject matter in Patent '477**

68. Strickland has affirmed repeatedly in other related actions and in personal communications with Guiliano that she was not involved in the decision making process to file Patent '477 without the name of Guiliano included.

69. Strickland has repeatedly told Guiliano she was not involved in the decision of who would be listed as an inventor on Patent '477.

70. As far as Guiliano can find, Strickland herself, and no counsel representing Strickland, has ever been engaged and filed a patent on behalf of Strickland in her personal capacity.

71. Goodwin has never interviewed Guiliano as to his inventorship contribution to the invention of cell-cultured milk.

72. Goodwin has never admitted to handling such materials which would be necessary to determine correct inventorship on Patent '477.

73. Guiliano is unsure what basis Biomilq,Inc has for claiming that Guiliano is not a correct inventor on Patent '407.

74. Since January 8, 2020, Strickland has consistently affirmed in personal conversation to Guiliano that she agrees he should be listed as an inventor on Patent '477.

75. In short, prior to sufficient discovery being completed, Guiliano is unaware if the disappearance of Guiliano's name was intentionally deceptive, however, it's clear that such a filing is incorrect.

76. Guiliano alleges the disappearance of Guiliano's name from Patent '477 caused unjust enrichment of Biomilq,Inc and Biomilq,Inc directors, Strickland, Egger and Breakthrough Energy Ventures ("BEV"), who controlled the board seats, held 100% of the shares in the case of Strickland and Egger, and 25% of Biomilq,Inc "future equity" in the case of BEV, at the time of filing Patent '477.

77. Guiliano also alleges that Goodwin has been unjustly enriched because they executed inequitable contracts on behalf of Biomilq,Inc, at the expense and to the exclusion of Guiliano and 108Labs, which led to cash payments for patent

filings, and other legal services related to patent prosecution and litigation, which should have gone to 108Labs patent counsel instead of Goodwin.

78. In particular, Goodwin should have know that Myers error in listing the inventors as applicants on Patent '407 does not affect any marital or corporate rights in Patent '407 subject matter, and does not give Goodwin any right to execute any contracts assigning such rights in Patent '407 to Biomilq,Inc which would be necessary to file Patent '477 in the first place.

79. In other words, Guiliano alleged that his marital estate and marital entity 108Labs are the true exclusive equitable owners of the spouses personal common interests in Patent '407, while Biomilq,Inc and Biomilq,Inc directors Strickland, BEV and Egger involved in the filing of Patent '477 have been unjustly enriched by such conduct which came at the expense of Guiliano and 108Labs.

80. Guiliano alleges that the inequitable assignment of Strickland's rights in Patent '407 combined with the disappearance of Guiliano's name on the subject matter of claims in Patent '477 caused Biomilq,Inc to inequitably become an exclusive rights holder in the entirety of Patent '407, explaining the inequitable motive for such conduct, because the intrinsic value in patent rights derives from exclusivity because exclusivity is a requirement for standing to sue patent infringers.

81. Irrespective of any other transactions, and whether or not assignment was inequitable or tortious, the absence of Guiliano's name from Patent '477

26

raises a distinct cause of action which must run under federal law, giving rise

to this action over that transaction which is an equitable claim of

inventorship and unjust enrichment here.

## Discovery of wrongdoing

82. Guiliano had no way to know that Goodwin was filing patents which

incorporated the entirety of Patent '407 without listing Guiliano until July 8,

2021, and did not discover the publication until weeks later.

83. Guiliano alleges that the title theory of unjust enrichment which arises out of

this action carries a ten year statute of limitations in North Carolina, because

the equitable claim runs through any inequitable exclusive claim in Patent

'407 and Patent '477 subject matter whose value may only arise by the

absence of Guiliano's name on such patent.

## This action arises from only one of a series of inequitable transactions, of which primarily transaction involving inventorship is distinctly and separately raised herein

84. This action indirectly arises from one of a series of inequitable transactions

since March 29, 2020, many of which are already under jurisdiction of other

civil actions pending in North Carolina Courts.

85. NC Orange County Case No. 22CVD283 ("22CVD283") regards Guiliano's

community property interest in all inventive subject matter created before

March 29, 2020, vested by marriage upon divorce a vinculo establishing

under North Carolina law an indisputable common ownership interests in

the entirety of subject matter in patent '407 conceived by Strickland and Guiliano, the so-called "marital interests" in Patent '407 and '477, irrespective of 108Labs' equitable claims also at issue in NC Orange County Case No. 22CVS255 ("22CVS255"), or Guiliano's inventor claims at issue here.

86. NC Orange County Case No. 22CVS255 regards misappropriation of 108Labs trade secrets, larceny of scientific samples, and other related claims that amount to a claim of corporate espionage by 108Labs LLC against Biomilq,Inc to steal and misappropriate the invention of cell-cultured milk. Guiliano is a defendant and counterclaim defendant in this action, which Guiliano claims was initiated maliciously against him during the funeral of his grandfather days after Guiliano noticed counterparties of his intent to file 22CVD283, after Guiliano came upon evidence of Biomilq,Inc's misappropriation of 108Labs' "SIgA Project" in his dining room on February 18, 2020. In this action, Guiliano counterfiled certain personal claims such as alienation of affection, and also filed "direct" claims which run "through" 108Labs, LLC, pursuant to *Barger v. McCoy Hillard Parks,* 346 N.C. 650, 488 S.E.2d 215 (N.C. 1997), due to the peculiar and unique damages to Guiliano, which is only made clearer by the filing of this action to request correction to inventorship on Patent '477.

87. Two other ancillary actions which Guiliano recently filed plead personal equitable claims of fraudulent conveyance and unjust enrichment over the

April 10, 2020 Transactions, with a few new related torts, distinct from

108Labs personal, and Guiliano's *direct*, claims in 22CVS255. These actions

include new fact and transaction pleadings resulting from two years of

discovery, while also adding all necessary parties to the "April 10, 2020

Transactions" who Guiliano has discovered had notice of Strickland's breach

of trust, filed as Orange County Case Nos. 24CVD473 and 24CVS500.

CLAIM ONE: Inventorship correction, pursuant to 35 U.S.C. § 256

88. This claim adopts all prior pleadings in support of this claim.

89. Guiliano is correctly listed on Patent '407 as an inventor alongside
Strickland, filed by Myers, 108Labs patent counsel.

90. Strickland, and no person, has ever disputed that Guiliano is a correct
inventor on Patent '407.

91. Strickland has repeatedly affirmed to Guiliano that she was not involved in
the decision by Goodwin and Biomilq,Inc on who should be listed as inventor
on Patent '477, which incorporates the entirety of subject matter in Patent
'407.

92. Despite facially appearing highly similar patent filings in terms of subject
matter descriptions, Patent '477 incorporates the entirety of Patent '407, but
incorrectly lists only Strickland as an inventor.

93. The absence of Guiliano as an inventor listed on Patent '477 requires
correction under 35 U.S.C. § 256.

94. Guiliano is a true and correct inventor of subject matter in the claims of Patent '477, having first conceived of making cell-cultured milk in conversation with his then-wife Strickland on September 11, 2013 while brainstorming on bovine cell type acquisition with Strickland, and making many important conceptual contributions in scientific collaboration with Strickland over seven years until January 17, 2020, when an experiment managed by Guiliano and Strickland for 108Labs LLC produced the world's first cell-cultured human milk.

CLAIM TWO: Unjust Enrichment

95. This claim adopts all prior pleadings in support of this claim.

96. The incorrect absence of Guiliano's name on Patent '477 creates an appearance of exclusive ownership interests by Biomilq,Inc in the entirety of the subject matter of Patent '407, including any subject matter which also appears in Patent '477.

97. Biomilq,Inc, Strickland, BEV, Egger and Goodwin have received tens of millions of dollars in cash payments and shares in Biomilq,Inc resulting from the filing and granting of claims in Patent '477.

98. Without the absence of Guiliano's name on Patent '477, Biomilq,Inc could not claim exclusive rights in any subject matter first described by Patent '407.

99. All value derived from the inventive and now-patented subject matter in Patent '407 emerged only because the absence of Guiliano's name on Patent

'477 creates an appearance that Biomilq,Inc owns exclusive rights in Patent '477.

100.   The incorrect appearance of exclusive ownership interests in Patent '477 by Biomilq,Inc, has unjustly enriched Egger, Strickland, BEV and Goodwin because such an incorrect transaction caused Biomilq,Inc to receive tens of millions of dollars in investment from third parties, beginning with BEV, who were aware that Strickland was married to Guiliano, Guiliano was an inventor on Patent '407, and both spouses created the subject matter of Patent '407 for 108Labs LLC before March 29, 2020.

101.   Upon correction of Patent '407, Guiliano requests the imposition of constructive trust to instantiate a res and begin a res accounting of all transactions which trace into patent filings and scientific operations resulting from third party payments made to Biomilq,Inc based on their inequitable claim of exclusive ownership interests in Patent '477, because such claims of exclusive ownership interests are incorrect, and only resulted from the inequitable divestment of Guiliano's common ownership interests in the Patent '477 subject matter by the absence of his name in relation to claims subject matter related to 3d tissue engineering of mammary cells which he personally conceived since September 11, 2013 in collaboration with Strickland in the privacy of his marriage with Strickland, while both were also founders, officers and co-managers of 108Labs LLC.

102. Strickland has been unjustly enriched by issuance of Biomilq,Inc shares and cash payments by Biomilq,Inc since she was majority shareholder when Patent '477 was filed with Guiliano's name incorrectly not listed as inventor.

103. Egger has been unjustly enriched by issuance of Biomilq,Inc shares and cash payments by Biomilq,Inc since she was first President and CEO of Biomilq,Inc when Patent '477 was filed with Guiliano's name incorrectly not listed as inventor.

104. BEV has been unjustly enriched by the SAFE contract and subsequent issuance of shares in Biomilq,Inc since BEV was a director of Biomilq,Inc when Patent '477 was filed without Guiliano's name listed as inventor.

105. Goodwin has been unjustly enriched by payments made to Goodwin for the execution of a series of inequitable transactions at patent offices filed by Goodwin for Biomilq,Inc culminating in the filing of Patent '407 which incorrectly does not list Guiliano as an inventor.

106. BEV, Strickland and Egger were the board members and 100% shareholders of Biomilq,Inc when Patent '477 was filed.

107. Goodwin had notice that Strickland and Guiliano were married, and Guiliano was a co-inventor on subject matter of Patent '407, when Goodwin filed Patent '477 and incorporated the entirety of Patent '407 but incorrectly failed to list Guiliano as an inventor. Goodwin has received millions of dollars in cash payment paid from the res to file patents and sue Guiliano in

22CVS255 in order to win a declaratory judgment that Guiliano owns no "legally cognizable interests" in the subject matter of Biomilq,Inc patents.

108.   Biomilq,Inc has been unjustly enriched by tens of millions of third party payments since the filing of Patent '477 with Guiliano's name incorrectly not listed as inventor.

Request for Relief:

1. Under the authority of 35 U.S.C. § 256, Guiliano requests correction of Patent '477 so that his name is properly listed as an inventor on subject matter which he co-invented with Strickland from 2013 to 2020; and

2. Guiliano requests imposition of constructive trust over all benefits received or conferred on Biomilq,Inc and Egger, Strickland, BEV, and Goodwin while assisting and directing Biomilq,Inc in scientific operations, patent filing, and fundraising operations based on the claim that Strickland was the sole inventor of subject matter in Patent '477; and

3. Any other equitable relief which this Court finds just and proper.

This the 8th day of July 2024.

Respectfully,

Shayne Guiliano
141 W. King. St.
Hillsborough, NC 27278
C. 919-450-7226
autonomous@gmail.com